UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAEA THALE,<br><br>   Plaintiff,<br><br>vs.<br><br>APPLE INC.,<br><br>   Defendant. | Case No.: C-11-03778-YGR<br><br>**ORDER GRANTING APPLE INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING CLAIM FOR PROFITS** |

Pending before the Court is Apple Inc.'s Motion for Partial Summary Judgment. (Dkt. No. 73.)[1] Plaintiff Taea Thale filed this action on August 1, 2011 alleging one claim of copyright infringement. (Dkt. No. 1.) Thale alleges that Apple used her copyrighted photograph in an iPhone commercial without her permission.

Apple filed its initial Motion for Partial Summary Judgment on November 1, 2012. Thale filed her Opposition to Apple's Motion for Partial Summary Judgment. (Dkt. Nos. 75 & 79.)[2] Apple filed its Reply Memorandum in Support of Motion for Partial Summary Judgment on December 4, 2012. (Dkt. No. 78.) The Court issued an order striking a surreply filed by Thale in violation of the Civil Local Rules. (Dkt. No. 82.) On December 18, 2012, the Court held oral argument on the Motion. (Dkt. No. 84.)

---

[1] Apple filed a redacted motion in conjunction with an Administrative Motion to File Documents Under Seal in Support of Apple Inc.'s Motion for Partial Summary Judgment. (Dkt. Nos. 62 & 63.) The Court denied the motion to seal (Dkt. No. 72) and Apple thereafter re-filed unredacted copies of its motion papers.

[2] Having denied Apple's motion to seal, the Court considers only Dkt. No. 79, Thale's unredacted Opposition. Dkt. No. 75 is the redacted version.

The sole issue presented in the pending Motion relates to causation—*i.e.*, whether Thale can show the required causal nexus between the alleged infringement and the indirect profits that she seeks under 17 U.S.C. sections 504(a)(1) and (b). Although not presently at issue in the Motion, Apple does not concede liability for the underlying alleged copyright infringement. (Mot. at 12 n.3.)

Having carefully considered the papers submitted and the pleadings in this action, the arguments of counsel, and for the reasons set forth below, the Court hereby **GRANTS** Apple's Motion for Partial Summary Judgment.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[3]

Thale is a professional photographer who took a photograph of the band "She & Him" (the "Photo"). She registered her copyright of the Photo on April 15, 2010. Thale alleges she executed a license of the Photo to Merge Media, Ltd. for limited use in magazines or on posters to promote appearances of She & Him. The license, however, explicitly excluded the right to use the Photo to promote other entities or products. Thale never licensed Apple to use or publish the Photo. Without her knowledge or consent, Apple incorporated the Photo into a national television commercial for the iPhone.

Between February and May 2010, Apple aired nine different television commercials for the iPhone 3GS. (RSS[4] No. 1.)[5] The television commercial that incorporated the Photo was called "Concert." (*Id.* No. 3.) "Concert" aired on television from April 5, 2010 through April 18, 2010. (*Id.* No. 2.) The Photo was on screen for no more than five seconds of the 30-second commercial. (*Id.* No. 3.) During "Concert," numerous images are displayed, including: (1) an iPhone 3GS; (2) icons of various applications; (3) a demonstration of the Shazam™ application; (4) digital album cover art for a She & Him album; (5) the iTunes store displaying digital album cover art for a She & Him album;

---

[3] As noted above, the parties do not dispute infringement for the purposes of this Motion and focus specifically on indirect profits. The following background section is not intended to provide an exhaustive factual or procedural summary of this action.

[4] "RSS" refers to Apple Inc.'s Response to Plaintiff's Opposing Separate Statement of Undisputed Material Facts in Opposition to Apple Inc.'s Motion for Partial Summary Judgment. (Dkt. No. 78-1.) Unless otherwise noted, the references to the material fact numbers include the evidence supporting the same.

[5] RSS No. 1 mistakenly refers to 2012, while the other RSS facts refer to 2010. (*See also* Mot. at 10.)

(6) digital album cover art for other albums; (7) another display of the digital album cover art for She & Him; (8) a pop-up alert or notification from the Local Concerts application; (9) an in-application display of the Photo with two other images of other musicians/artists; (10) a menu from the Goldenvoice.com website; and (11) another display of the Photo. (*Id.* No. 4.)[6]

In the Complaint, Thale seeks, among other relief, "damages in the amount of her actual damages and any profits of the Defendant attributable to the infringing acts alleged [t]herein, consistent with 17 U.S.C. [section] 504(a)(1), or, upon election, an award of statutory damages consistent with 17 U.S.C. [section] 504(a)(2) together with prejudgment and post-judgment interest." (Compl. at Prayer for Relief ¶ A.) The profits portion of the damages claim is at issue in this Motion.

## II. LEGAL STANDARD

Summary judgment is appropriate when no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings, depositions, discovery responses, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the non-moving party will

---

[6] The Court notes that Thale disputes only two of Apple's undisputed material facts, specifically RSS Nos. 4 and 5. However, Thale provides no evidence to show there is a triable issue of fact and merely refers to Court to the underlying evidence provided by Apple in support of the fact. Because Thale has failed to substantiate her claimed dispute of these facts, they are deemed undisputed for the purposes of this Motion.

bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that the non-moving party lacks evidence to support its case. *Id.* If the moving party meets its initial burden, the opposing party must then set out "specific facts" showing a genuine issue for trial in order to defeat the motion. *Id.* (quoting *Anderson*, 477 U.S. at 250). The opposing party's evidence must be more than "merely colorable" but must be "significantly probative." *Id.* at 249–50. Further, that party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows a genuine issue of material fact exists for trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000); *Nelson v. Pima Cmty. College Dist.*, 83 F.3d 1075, 1081–1082 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute"); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) ("conclusory allegations unsupported by factual data are insufficient to defeat [defendants'] summary judgment motion").

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). However, in determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted). Rather, a court is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *See id.*; *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.")

**III.    DISCUSSION**

    **A.    Damages and Profits for Copyright Infringement Under 17 U.S.C. Section 504 ("Section 504") in the Ninth Circuit**

Under Section 504(a), "[e]xcept as otherwise provided by this title, an infringer of copyright is liable for either--(1) the copyright owner's actual damages and any additional profits of the infringer,

as provided by subsection (b); or (2) statutory damages, as provided by subsection (c)." Sub-section (b) provides for additional profits as follows:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b). In the Ninth Circuit, a copyright infringement plaintiff who seeks to recover indirect profits under Section 504(b) "must proffer some evidence [at the summary judgment stage] to create a triable issue regarding whether the infringement at least partially caused the profits that the infringer generated as the result of the infringement." *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002).

In *Mackie*, plaintiff Mackie was an artist who specialized in creating public works. *Id.* at 911. Defendant Seattle Symphony Orchestra Public Benefit Corporation ("Symphony") contracted with defendant Rieser, a graphic artist, to help design a direct-mail subscription campaign. *Id.* at 912. Rieser created a montage of combined images, which incorporated Mackie's works into the design. *Id.* The Symphony, in turn, incorporated Rieser's artwork into a 24-page promotional brochure, which was mailed to approximately 150,000 individuals throughout the United States. *Id.* Mackie sued for copyright infringement, seeking a hypothetical royalty payment, recoupment of profits that the Symphony generated during the season in which the brochures were sent, and profits for future seasons. *Id.* at 912–13.

Symphony moved for partial summary judgment on the ground that Mackie failed to establish a direct link between the infringing use and revenue for a particular series. *Mackie*, 296 F.3d at 913.[7] Mackie retained a damages expert, who initially stated it was impossible to determine how much of the Pops revenue could be traced to the infringing artwork. *Id.* at 913. The expert later submitted a supplemental declaration stating that because the Symphony had hoped to get a return rate of 1.5%

---

[7] Rieser's collage appeared in the brochure directly following a page that contained information about "Pops" series performances. *Mackie*, 296 F.3d at 912. The claim for recoupment of profits was for revenue from the "Pops" series. *Id.* at 913.

5

from its brochures, such desired rate could justify the amount sought by Mackie. *Id.* The district court disagreed, concluding that the expert testimony and report were far too speculative as a matter of law to support an award of indirect profits. *Id.*

On appeal, the Ninth Circuit affirmed and began its indirect profits analysis by noting that in this circuit, "a copyright holder must establish the existence of a causal link before indirect profits damages can be recovered." *Mackie*, 296 F.3d at 914. The Court had previously held that a district court *could preclude* recovery of profits "if they are only remotely or speculatively attributable to the infringement." *Id.* at 914 (citing *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985)).[8]

Ultimately, the Ninth Circuit held that "to survive summary judgment on a demand for indirect profits pursuant to [Section] 504(b), a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Mackie*, 296 F.3d at 915–16. Under this standard, Mackie failed to proffer non-speculative evidence that was sufficient to create a triable issue of fact. Mackie's own expert did not understand how it would be possible to establish a causal link between the infringing use and the Pops series revenues "through the inclusion of the collage in the direct-mail literature." *Id.* at 916. The Court also rejected the expert's supposition that the goal of generating 1.5% response rate to the brochures was correlated with revenue. *Id.* ("such a rudimentary analysis cannot determine how many of those individuals subscribed *because of Rieser's work*") (emphasis in original). There, the nexus was "even more attenuated because the artwork was but one page in a multi-page brochure that advertised a series of concerts that were unrelated to the artwork itself." *Id.*

Two years later, in *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004), the Ninth Circuit "reiterate[d] the principle that a plaintiff in a copyright infringement action must establish a sufficient causal connection between the infringement and the infringer's profits it seeks to recover." *Id.* at 703; *see id.* at 708 (reaffirming *Mackie* specifically). In *Polar Bear*, defendant Timex

---

[8] The Ninth Circuit also noted that the *Frank Music* holding "strongly implied that a district court must conduct a threshold inquiry into whether there is a legally sufficient causal link between the infringement and subsequent indirect profits. Such an approach dovetails with common sense-there must first be a demonstration that the infringing acts had an effect on profits before the parties can wrangle about apportionment." *Mackie*, 296 F.3d at 915.

6

Corporation did not dispute that it used the copyrighted images (specifically, a promotional film produced by Polar Bear Productions) without permission and beyond the period allowed by a license. *Id.* at 704.  The infringing uses took three forms: (i) a tape playing on a loop at trade shows; (ii) a promotional campaign associated with Mountain Dew; and (iii) in videos used to train salespeople at a large national retailer.  *Id.*  For the infringement, Polar Bear sought actual damages and indirect profits under Section 504(b).  *Id.* at 707 n.5.

The Ninth Circuit articulated the two-step framework under Section 504(b) for indirect profits: "[first,] the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and[, second,] once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement."  384 F.3d at 711.  As to the copyright claimant's proffer, "the profits sought [must be] those that arise from the infringement" and thus he or she is "required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a *legally significant relationship* to the infringement."  *Id.* (emphasis supplied) (noting that it makes "little practical or legal sense" to interpret "gross revenues" in Section 504(b) to permit a plaintiff to simply provide the company's overall gross revenue).  "[T]he causation element of the statute serves as a logical parameter to the range of gross profits a copyright plaintiff may seek."  *Id.*

Polar Bear sought recovery of purported indirect profits based on aggregating: (i) Timex's direct sales at trade shows; (ii) use of a still image in the Mountain Dew promotion; and (iii) overall enhancement of brand prestige.  *Polar Bear*, 384 F.3d at 712.  The Court held that Polar Bear satisfied the requirement of a "reasonable approximation" in assessing profits attributable to the infringing material with respect to (i) and (ii).  *Id.*[9]  However, the Court held that substantial evidence did not support the causal link between infringement and revenue based on "enhanced brand prestige," which was the bulk of the indirect profits claim:

---

[9] Polar Bear's expert determined a profit margin from Timex's invoices and claimed only a portion of the total gross revenues from trade booth sales.  As to the Mountain Dew promotion, a causal nexus was established through evidence that the Mountain Dew booklet contained an advertisement with the infringing material, customers who ordered Timex watches through the promotion would have seen the advertisement, and that Timex profited from the promotion.  384 F.3d at 712.

7

> To recover indirect profits under its brand premium theory, Polar Bear shoulders the burden of demonstrating that the infringement is causally linked to the revenues from the sales of all Expedition watches. Polar Bear's theory of the causal link between Timex's infringement and its increased revenue is that the infringement at the trade shows created excitement about the product and an association between Expedition watches and outdoor sports, that the excitement and association generated at the trade shows *somehow translated into consumers purchasing Timex's products*, and that consumer enthusiasm permitted Timex to increase prices and generate more revenue. *According to Polar Bear, the necessary causal link is evidenced by Timex's statement that the "PaddleQuest" promotion was an unqualified success, as well as evidence that "PaddleQuest" images formed a significant part of Timex's promotion at the twelve trade shows.* Unfortunately, even taking this circumstantial evidence in the light favorable to the jury verdict, we conclude as a matter of law that evidence of the requisite causal connection is *woefully insufficient*. Polar Bear's theory stretches the causation rubber band to its breaking point.

*Id.* at 713–14 (internal citation and parenthetical omitted; emphasis supplied). No requirement exists to put customers on the witness stand to testify about why they purchased the items they did. *Id.* at 715. But even where the court suspects that a defendant "derived some quantum of profits from the infringement . . . , it *nevertheless remains the duty of the copyright plaintiff* to establish a *causal connection* between the infringement and the gross revenue reasonably associated with the infringement." *Id.* (emphasis supplied).[10]

## B. Summary of Arguments

Apple asks this Court to dismiss Thale's indirect profits claim because the claim for indirect profits is impermissibly speculative. (Mot. at 12–18.)[11] Apple argues that Thale has not sufficiently tied the use of the Photo to a particular revenue stream, and thus her request for indirect profits impermissibly hinges on mere use of the Photo. (*Id.* at 2–3.) Relying heavily on *Mackie*, Apple submits that Thale must tie the infringement to a revenue stream and also "show that her [Photo] –

---

[10] The Ninth Circuit vacated the indirect profits award because the jury did not detail how it arrived at the indirect profits figure of $2.1 million. Despite having sufficiently shown causation as to two portions of the indirect profits award, the Court was unable to determine how much of the award was attributed to brand premium effect, and thus the total award could not be supported in light of the evidence as a whole. 384 F.3d at 716.

[11] Apple seeks to limit Thale's available monetary award to actual damages, if any. (Mot. at 20.) As noted above, Thale seeks actual damages and profits under Section 504(a)(1), "or, upon election," statutory damages under Section 504(a)(2). (Compl. at Prayer for Relief ¶ A.)

8

and not any other part of or the 'Concert' commercial as a whole – caused iPhone 3GS sales." (*Id.* at 3, 14.)[12] Said differently, Thale's burden under *Mackie* and *Polar Bear* is to prove that Apple sold iPhone 3GS products *because* of the use of her work within the commercial. (*Id.* at 14.)

Apple makes four arguments showing the lack of a causal nexus with the claim for profits. First, Apple contends that Thale proffers no evidence to support her claim that the Photo itself caused any sales. A consumer may have decided to purchase an iPhone 3GS because of the use of: (i) another photograph of She & Him in the commercial; (ii) a photograph of another band; or (iii) any other application, website, or feature shown in the commercial. (Mot. at 15, 19.)

Second, Apple argues that the iPhone was "well established in the consumer marketplace" at the time of "Concert," which makes it impossible to ascribe iPhone 3GS sales to the use of a single commercial, let alone one image in a single commercial. (Mot. at 16.) Here, Thale has presented no evidence isolating and identifying which purchasers, if any, saw the Photo while "Concert" aired before purchasing an iPhone 3GS, nor has she presented any theory as to how such analysis could be performed. (*Id.* at 16–18.)

Third, two additional commercials ran during the time period that "Concert" ran, each featuring different applications that can be used on an iPhone. (Zellmer Decl. ¶¶ 5–6; Mot. at 6.) Again, Thale has presented no evidence nor theory upon which to distinguish sales resulting from each respective commercial.

Fourth, overall sales of the iPhone decreased during the relevant time period, February 28, 2010 to May 29, 2010, which is the time during which "Concert" aired and the month immediately preceding and following that period. (RSS No. 5.)[13] Apple reasons that based on the strength of iPhone sales performance and under Ninth Circuit authority, Thale must at least show an overall

---

[12] Here, the Photo was but one part of the commercial. (RSS No. 4.) "Concert" was also one of nine iPhone 3GS commercials that ran between February and May 2010 and it only ran for a 14-day period in April 2010. (RSS Nos. 1 & 2.) In total, "Concert" ran on television 35 times. (Declaration of Cristie Zellmer in Support of Motion for Partial Summary Judgment (Dkt. No. 73-4 ["Zellmer Decl."]) ¶ 6.)

[13] *See* n.6, *supra*.

9

positive effect on sales based on "Concert" in order to show that her Photo within the commercial caused consumers to buy the iPhone 3GS. (Mot. at 18.)

Thale acknowledges that she is "required to show some nexus between Apple's infringement (the Concert Commercial) and the indirect profits she seeks." (Opp. at 3–4.) She argues, however, that she is not required to prove the nexus by showing iPhone sales *increased* as a result of the infringement. (*Id.* at 4.)[14] Thale also contends that a causal nexus is not required, only a nexus. As such, Thale principally argues that her burden of showing a nexus is satisfied because the Photo was: (i) the "centerpiece" of the commercial; (ii) "selected precisely because it promoted Apple's intended image"; and (iii) favorably received. (Opp. at 8.) Sales of "Apple iPhones" were the "direct and intended consequence of the ads in which the photograph was featured" and therefore "enough evidence exists for a jury to reasonably find that Ms. Thale's copyrighted photograph, which was intentionally placed in the ["Concert" commercial], contributed at least somewhat to the sale of iPhones." (*Id.* at 1–2.)[15]

Notably, Thale's Opposition does not refer to the Ninth Circuit's opinion in *Mackie*. Thale does argue that *Polar Bear* is helpful to her position in two ways: first, the case states that a plaintiff is not required to call customers to the stand to testify that their purchases were because of the use of copyrighted images. (Opp. at 4.) Second, the Ninth Circuit there disallowed a damages theory based on gross revenues from all sales. Here, Thale's indirect profits claim is limited to "sales of iPhone products for a limited period of time reasonably related to the airing of the Concert Commercial" and thus complies with "case law" such as *Polar Bear*. (*Id.* at 8*; see id.* at 1 & 14–15 (limiting damages to the "product that was actually being advertised . . . , namely the iPhone" during the "roughly three week[ period] in April of 2010").) Thale "points out that she has not yet prepared such damages

---

[14] Apple states in its Reply that it does not contend she must prove that sales increased in order for Thale to recover profits. (Reply at 3.) Regardless of whether sales increased or decreased, it argues that she must proffer evidence creating a triable issue of fact regarding whether the infringement *caused* any profits generated. (*Id.* (acknowledging that the decrease in iPhone 3GS sales is not dispositive regarding causation, but it does not assist Thale in meeting her burden).)

[15] While Thale argues that the commercial "ran in order to sell iPhones" and "contributed at least somewhat to the sales of iPhones," she fails to address the basis for seeking profits for all "iPhones" sold during the relevant period when "Concert" only advertised the iPhone 3GS. (Opp. at 2, 14.)

10

analysis only because the parties have agreed that actual sales figures would not be produced by Apple until this motion is resolved." (Opp. at 14 n.1.)

### C. Analysis

The Court agrees with Apple that Thale has failed to "proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Mackie*, 296 F.3d at 916. Thale's proffer of evidence and arguments fail because she has misinterpreted her burden on this motion for summary judgment and her factual support on causation is lacking. Plaintiff mistakenly construes her various authorities as permitting an indirect profits claim as long as the claim does not seek all profits for all products. (*See* Opp. at 6–7.)

First, with respect to her legal burden, Thale posited at oral argument that the Ninth Circuit scaled back from the causation requirement in *Mackie* by using the word "nexus" in *Polar Bear*. The Court disagrees. In *Polar Bear*, the Ninth Circuit "t[ook] th[e] opportunity to reaffirm the principle that a plaintiff in a [Section] 504(b) action must establish this causal connection, and that this requirement is akin to tort principles of causation and damages." *Polar Bear*, 384 F.3d at 708 (citing *Mackie*, 296 F.3d at 915 n.6 & 916–17). Thale fails to recognize that the phrase "causal nexus" and references to "causation" appear throughout *Polar Bear*. *See Polar Bear*, 384 F.3d at 711–12. Her argument that only a "nexus" is required has no support in this circuit. Under the two-step framework under Section 504(b) for indirect profits, Thale must "first show a causal nexus between the infringement and the gross revenue." *Id.* at 711. If, and only if, she establishes a causal nexus would Apple "bear[] the burden of apportioning the profits that were not the result of infringement." *Id.*

Thale's reliance on out-of-circuit authority to argue that she is not required to show causation at this time is misplaced. Not only are *Mackie* and *Polar Bear* controlling, but most of the cases cited by Thale involved examining sufficiency of evidence following a jury verdict. (Opp. at 5–7.) One such case is *Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789 (8th Cir. 2003), in which the Eighth Circuit reversed and reinstated a jury's profit award where the infringing use was "the centerpiece of a commercial that essentially showed nothing but the TT coupe." *Id.* at 797 & 800. The jury had awarded "10% of th[e] profit generated by the sale of the TT coupe during the time period that the commercial aired as the profit attributable to Audi's infringing use of Andreas's

copyrighted work" after "impliedly f[inding] that 90% of Audi's profit was attributable to factors other than the infringement." *Id.* at 798 (holding jury had non-speculative basis for award). The infringing use in *Andreas* is not similar to the use here, nor does its holding support an inference that Thale—who has no comparable evidence to the plaintiff in *Andreas*—has a sufficient basis to claim profits. To the extent that Thale argues that it is Apple's burden to prove that its profits were caused by reasons other than the Photo, even the *Andreas* court noted that a defendant's burden of approving apportionment arises *after* a plaintiff establishes revenue from the sale of the infringing product. *Id.* at 796 (citing *Frank Music*, 772 F.2d at 518).[16]

Next, Thale's references to in-circuit authority are both distinguishable and not relevant to the burden established under *Mackie* and *Polar Bear*. In *Lucky Break Wishbone Corp. v. Sears Roebuck & Co.*, 373 Fed. App'x 752 (9th Cir. 2010), the Ninth Circuit (in an unpublished opinion) examined a jury verdict in favor of a copyright owner and held that an award of indirect profits was supported by substantial evidence.[17] Further, "[t]he gross revenue figure presented by Lucky Break was limited to transactions in which the coupon was redeemed, and an award of just under 30% of the gross revenue for those transactions was reasonable based upon the evidence presented at trial." *Id.* at 758. Also distinguishable is *Garcia v. Coleman*, No. C-07-2279 EMC, 2009 WL 799393 (N.D. Cal. Mar. 24, 2009), where the copyrighted photograph was sold on defendants' wine and there was no dispute that

---

[16] Thale also references *Bonner v. Dawson*, 404 F.3d 290 (4th Cir. 2005), in which the Fourth Circuit examined a district court's denial of a post-trial motion for judgment as a matter of law following a plaintiff's verdict awarding actual damages but no infringer's profits. *Id.* at 291. The appellate court held the district court erred in concluding plaintiff had not met his preliminary burden of establishing the required causal connection, also noting that the "burden of demonstrating some causal link between the infringement and the particular profit stream [must be met] before the burden-shifting provisions of [Section] 504(b) apply." *Id.* at 294 & 295 (holding substantial evidence supported jury's verdict of no profits where defendants had produced significant evidence that their profits were attributable to factors other than the copyrighted work). Again, this case does not support Thale's argument that a mere identification of a nexus is sufficient to defeat summary judgment.

[17] Specifically, the copyright claimant introduced evidence: (i) "that the wishbone coupon was redeemed at a rate 42.7% higher than the average rate of bounce-back coupons distributed in December"; and (ii) of a revenue stream bearing a legally significant relationship to the infringement by showing "that Sears took in $5,150,045 in revenue during sales in which coupons were actually redeemed." 373 Fed. App'x at 757.

they profited from the sale of their wine.  "As in *Polar Bear*, there is no doubt that consumers who bought the wine would have seen the copyrighted photograph on the bottle label." *Id.* at *4 (copyrighted image was integral to the product itself and more akin to a direct profit case).  These authorities do not support Thale's argument that a mere "nexus" is sufficient to meet her burden on summary judgment regarding indirect profits.

Second, with respect to whether triable issues of material fact exist, Thale's attempt to create a "triable" issue by citing alleged facts unrelated to the issue of causation are irrelevant to the issue before the Court.[18]  *See Soremekun*, 509 F.3d at 984 (on an issue where the non-moving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that the non-moving party lacks evidence to support its case).  According to Thale, these facts show that the Photo was the "centerpiece" of the commercial, that it was selected "precisely" because it promoted Apple's intended image, and it was favorably received. (Opp. at 8.)  Even assuming *arguendo* that these facts are undisputed, they are not material to causation, and, in fact, they fail to address causation between use and revenue altogether.  At best, Thale's facts establish that Apple liked the Photo, used it, approved of the "Concert" commercial, and hoped that it would generate sales of iPhones.  On this basis, Thale then baldly concludes that causation exists: "On the present

---

[18] These facts include:
   RSS No. 6: "Apple is very selective of the content it includes in its iPhone commercials."
   RSS No. 7: "Steve Jobs personally approved the Concert Commercial for airing on national television."
   RSS No. 8: "The Concert Commercial uses the Thale Image."
   RSS No. 9: "The band She & Him was selected for the Concert Commercial because they fit with the Apple image."
   RSS No. 10: "The Thale Image is the only element of the Concert Commercial which shows the actual band She & Him."
   RSS No. 11: "The visual element of the band She & Him was more important than the band's music."
   RSS No. 12: "The Concert Commercial was not approved for use without the Thale Image."
   RSS No. 13: "After the Thale Image was included in the Concert Commercial, it was approved for airing on national television."
   RSS No. 14: "After being shown in the Concert Commercial in the Thale Photograph, Zooey Deschanel was used again in later Apple commercials."

(Dkt. No. 78-1.)

13

evidentiary record, the only *reasonable* conclusion is that the intentional selection and use of the Thale photograph *did have an impact* on iPhone sales--*no other logical conclusion* can *reasonably* be reached." (Opp. at 15–16 (emphasis supplied).)[19]  Logical and reasonableness, however, do not equate to causation for the purposes of this Motion.

A theoretical nexus to profits in opposition to summary judgment is insufficient.  Thale must proffer non-speculative evidence showing that "infringement at least partially caused the profits." *Mackie*, 296 F.3d at 911, 915–16.  Thale has proffered no evidence that the use of the Photo caused any iPhone 3GS sales, nor that the "Concert" commercial did itself.  As in *Mackie*, the Photo here was integrated into no more than five seconds of a 30-second commercial where numerous images *and* various product functions were displayed.  There is no evidence showing that sales resulted from the mere use of the Photo.  *See Mackie*, 296 F.3d at 916 ("we can surmise virtually endless permutations to account for an individual's decision to subscribe to the Pops series, reasons that have nothing to do with the artwork in question").)  As a threshold matter, it is Thale's burden to establish a causal connection to *some portion* of profits before Apple must carry the burden of apportioning profits that were not the result of infringement.  *Polar Bear*, 384 F.3d at 711 & 715 (even where the court suspects that a defendant "derived some quantum of profits from the infringement . . . , it nevertheless remains the duty of the copyright plaintiff to establish a causal connection between the infringement and the gross revenue reasonably associated with the infringement").  Thale did not proffer any evidence directly related to causation or even a method for showing that the alleged infringement actually influenced customers.[20]

---

[19] Thale also argues it is disingenuous for Apple to argue that the commercial did not achieve its intended purpose based on the evidence of decreased sales around the time of the commercial.  (Opp. at 2.)  Although explaining the "dip in sales" as being "[o]bviously" attributable to consumers awaiting the release of the next iPhone model, Thale cites *no evidence* to support this argument.

[20] While Thale argues that she has "not yet prepared [a] damages analysis" because the parties agreed not to produce sales figures until after this Motion (Opp. at 14 n.1), this is not sufficient to withstand summary judgment.  The discovery stay in this action was lifted in March 2012 to permit discovery regarding causation.  (Dkt. No. 58.)  The Court specifically set deadlines for both expert and non-expert discovery for the purposes of this Motion.  Importantly, nothing prevented Plaintiff from presenting some form of expert analysis that could explain—even without precise sales figures and without any tracking by Apple of the success of its commercials through surveys or any other method

1   Because Thale has failed to show a causal nexus between the infringement and any gross revenue under relevant Ninth Circuit authority, her claim for indirect profits must be **DISMISSED**.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment is **GRANTED**. A Case Management Conference is hereby scheduled for July 22, 2013.  The parties shall provide a Joint Case Management Statement pursuant to the Court's Standing Order in Civil Cases and Local Rules.

This Order terminates Dkt. Nos. 63 & 73.

**IT IS SO ORDERED.**

Dated: June 26, 2013

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

28  (Mot. at 16)—the method upon which it would be possible to establish a *causal link* between use of the Photo and iPhone 3GS sales based on the evidence accumulated by Thale.